## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STATES OF NEW YORK,
CALIFORNIA, ILLINOIS,
MINNESOTA, NEW MEXICO, and
VERMONT, and the DISTRICT OF
COLUMBIA,

              Plaintiffs,

     v.

UNITED STATES DEPARTMENT
OF AGRICULTURE; UNITED
STATES DEPARTMENT OF
AGRICULTURE FOOD AND
NUTRITION SERVICE; and
SONNY PERDUE, in his official
capacity as Secretary of Agriculture,

              Defendants.

CIVIL ACTION NO.

**COMPLAINT**

## INTRODUCTION

1.     In 2018, the U.S. Department of Agriculture significantly weakened

the federal nutritional standards for sodium and whole grains in school breakfasts

and lunches that it had established in 2012. The agency made these changes

without providing the public an opportunity to comment on them and in

contravention of nutritional requirements for school meals established by Congress.

2.     Plaintiff States bring this case to protect the health of the

schoolchildren in their States by ensuring that nutritional standards for school

meals are not changed without an opportunity to comment on the changes and that,

as required by Congress, the standards are based on the Dietary Guidelines for

Americans, the recommendations of the National Academy of Sciences, and scientific research regarding children's nutrition.[1]

3.      For decades, Congress has recognized the importance of nutrition in schools. In 1946, Congress enacted the National School Lunch Act "to safeguard the health and well-being of the Nation's children" by subsidizing school lunches nationwide. *See* 42 U.S.C. § 1751. In 1966, "[i]n recognition of the demonstrated relationship between food and good nutrition and the capacity of children to develop and learn," Congress enacted the Child Nutrition Act to subsidize school breakfasts. *See* 42 U.S.C. § 1771.

4.      School meals play a vital role in the lives of millions of schoolchildren in America, including children who live in the States. Indeed, Congress found in 1988 that "[t]he importance of the child nutrition programs cannot be overstated."[2]

5.      In 2018, nearly 30 million children consumed nearly five billion school lunches and more than 14 million children ate school breakfasts under the national school lunch and breakfast programs.

6.      The programs are especially important for children in low-income families. In 2018, more than 74% of school lunches and 85% of school breakfasts were provided free or at a reduced price.

---

[1] "States" include the District of Columbia.

[2] Child Nutrition Programs: Issues for the 101st Congress. Report Prepared for the H.R. Subcomm. on Elementary, Secondary, and Vocational Educ. of the Comm. on Educ. and Labor, 100th Cong., 2d sess, at iii (Dec. 1988).

7.      The programs are also critically important for students of color: according to the U.S. Department of Agriculture's own figures, a disproportionate share of students who participate in the national school lunch and breakfast programs are Black or Latino compared to their overall enrollment in schools.

8.      Recognizing the importance of school meals and children's nutrition, the National School Lunch Act and the Child Nutrition Act require defendants (together, "USDA") to ensure that school lunches and breakfasts meet nutritional requirements. As initially enacted, both Acts require USDA to prescribe nutritional requirements "on the basis of tested nutritional research." *See* 42 U.S.C. §§ 1758(a)(1), 1773(e)(1). In 1994, Congress reinforced that mandate by requiring school meals to be consistent with the Dietary Guidelines for Americans. *See* 42 U.S.C. § 1758(f)(1). In 2010, Congress further reinforced that mandate by requiring USDA to update the nutritional requirements based on a 2009 study by the Food and Nutrition Board, which is part of the National Academy of Sciences. *See* 42 U.S.C. § 1753(b)(3)(A).

9.      Pursuant to those statutory mandates, USDA issued a rule in 2012 ("2012 Rule") establishing major nutritional standards for school meals based on the Dietary Guidelines for Americans and the 2009 Nutrition Board Study. 77 Fed. Reg. 4088 (Jan. 26, 2012). Those standards included phased-in sodium restrictions on a gradual, ten-year timeline, to reduce the sodium content of school meals, *id.* at 4097-98, as well as a requirement increasing the whole grains served in schools, *id.* at 4093-94.

10.     But in 2018, USDA issued a rule ("2018 Rule") that significantly weakened the nutritional standards in the 2012 Rule by (1) eliminating the final maximum sodium target scheduled to go into effect in the 2022-2023 school year; (2) delaying by five years an intermediate maximum sodium target scheduled to go into effect in the 2019-2020 school year; and (3) cutting in half the amount of whole grains required to be served, beginning in the 2019-2020 school year. 83 Fed. Reg. 63,775, 63,780-83 (Dec. 12, 2018).

11.     USDA failed to give the public notice of and an opportunity to comment on the 2018 changes to the sodium and whole grain requirements, as required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b), (c). The opportunity to comment on an interim final rule issued in 2017 did not provide an opportunity to comment on the 2018 Rule's changes because the interim final rule did not institute the changes made by the 2018 Rule or provide notice that USDA was considering those changes.

12.     As a result, USDA's sodium and whole grains changes were adopted "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).

13.     The changes to the sodium and whole grain requirements made by the 2018 Rule were not based on tested nutritional research, the latest Dietary Guidelines, or the 2009 Nutrition Board Study, as required by statute.

14.     As a result, the 2018 Rule's changes to the sodium and whole grain requirements are "not in accordance with law" and are "arbitrary [and] capricious" under the APA, 5 U.S.C. § 706(2)(A).

15.     The States accordingly ask the Court to "hold unlawful and set aside" the changes to the sodium and whole grain requirements in the 2018 Rule under the APA, 5 U.S.C. § 706(2)(A), (D).

## JURISDICTION AND VENUE

16.     The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a). Jurisdiction is also proper under the judicial review provisions of the APA, 5 U.S.C. § 702.

17.     Venue is proper within this federal district, pursuant to 28 U.S.C. § 1391(e), because plaintiff State of New York resides within the district.

## THE PARTIES

18.     Plaintiff New York is a sovereign state of the United States of America. As a body politic and a sovereign entity, it brings this action on behalf of itself and as trustee, guardian, and representative of all residents and citizens of New York, including children. Over one and a half million children in New York participated in the school lunch program in 2018 and over 500,000 in the breakfast program. Those children consumed over 400 million school meals in 2018.

19.     Plaintiff California is a sovereign state of the United States of America. As a body politic and a sovereign entity, it brings this action on behalf of itself and as trustee, guardian, and representative of all residents and citizens of California, including children. Over three million children in California participated in the school lunch program in 2018 and over one and a half million in the breakfast program. Those children consumed over 800 million school meals in 2018.

20.     Plaintiff Illinois is a sovereign state of the United States of America. As a body politic and a sovereign entity, it brings this action on behalf of itself and as trustee, guardian, and representative of all residents and citizens of Illinois, including children. Over one million children in Illinois participated in the school lunch program in 2018 and over 400,000 in the breakfast program. Those children consumed over 200 million school meals in 2018.

21.     Plaintiff Minnesota is a sovereign state of the United States of America. As a body politic and a sovereign entity, it brings this action on behalf of itself and as trustee, guardian, and representative of all residents and citizens of Minnesota, including children. Over 600,000 children in Minnesota participated in the school lunch program in 2018 and over 200,000 in the breakfast program. Those children consumed over 100 million school meals in 2018.

22.     Plaintiff New Mexico is a sovereign state of the United States of America. As a body politic and a sovereign entity, it brings this action on behalf of itself and as trustee, guardian, and representative of all residents and citizens of New Mexico, including children. Over 200,000 children in New Mexico participated in the school lunch program in 2018 and over 100,000 in the breakfast program. Those children consumed over 58 million school meals in 2018.

23.     Plaintiff Vermont is a sovereign state of the United States of America. As a body politic and a sovereign entity, it brings this action on behalf of itself and as trustee, guardian, and representative of all residents and citizens of Vermont, including children. Over 46,000 children in Vermont participated in the school

6

lunch program in 2018 and over 25,000 in the breakfast program. Those children consumed over 11 million school meals in 2018.

24.     Plaintiff District of Columbia (District) is a municipal corporation empowered to sue and be sued, and is the local government for the territory constituting the permanent seat of the federal government. The District brings this case through the Attorney General for the District of Columbia, who is the chief legal officer for the District and possesses all powers afforded the Attorney General by the common and statutory law of the District. The Attorney General is responsible for upholding the public interest and has the authority to file civil actions in order to protect the public interest. D.C. Code § 1-301.81. The District brings this action on behalf of itself and as trustee, guardian, and representative of all residents and citizens of the District of Columbia, including children. Over 50,000 children in the District of Columbia participated in the school lunch program in 2018 and over 35,000 in the breakfast program. Those children consumed over 15 million school meals in 2018.

25.     Defendant United States Department of Agriculture ("the Department") is a cabinet agency within the executive branch of the United States government and an agency within the meaning of 5 U.S.C. § 552(f). The Department is required to implement the school lunch and breakfast programs, including issuing regulations establishing the nutritional requirements for school meals. 42 U.S.C. §§ 1753(b)(3)(A), 1758(a)(1), 1758(f)(1), 1773(e)(1).

26.     Defendant Food and Nutrition Service, a sub-agency of the

Department, administers the Department's nutrition assistance programs,

including the school lunch and breakfast programs.

27.     Defendant Sonny Perdue is the Secretary of Agriculture and is sued in

his official capacity.

## BACKGROUND

### I.     The School Lunch and Breakfast Programs.

28.     In 1946, Congress enacted the National School Lunch Act ("School

Lunch Act") "to safeguard the health and well-being of the Nation's children" by

creating and subsidizing a nationwide system of school lunches. Pub. L. No. 79-396,

§ 9, 60 Stat. 230, 233 (1946) (codified at 42 U.S.C. § 1751).

29.     In 1966, Congress enacted the Child Nutrition Act, establishing a

subsidized school breakfast program "[i]n recognition of the demonstrated

relationship between food and good nutrition and the capacity of children to develop

and learn." Pub. L. No. 89-642, § 2, 80 Stat. 885, 885 (1966) (codified at 42 U.S.C.

§ 1771).

30.     The school lunch and breakfast programs are operated by public and

non-public local operators, referred to in USDA's regulations as "school food

authorities," and are overseen by the Food and Nutrition Service and by state

agencies, typically state education departments. 7 C.F.R. §§ 210.2, 210.3(b), 220.2,

220.3(b).

31.     Federal funding for school meals is provided in the form of

reimbursements for each meal served that meets the nutritional requirements in

8

USDA's regulations. 7 C.F.R. §§ 210.7, 220.9. Meals that are served free or at a reduced price to children from lower-income families are reimbursed at higher rates. 83 Fed. Reg. 34,105, 34,105-07 (July 19, 2018); 7 C.F.R. §§ 210.4(b), 220.9(b).

32.    USDA also directly purchases food for school meals ("USDA Foods") and provides it to school food authorities, often through a state agency. *See* 7 C.F.R. § 250.56. Each school food authority receives an annual allotment to procure USDA Foods. *Id.* § 250.56(c).

33.    State agencies implement and enforce the nutritional and fiscal requirements of the school lunch and breakfast programs.

34.    Congress has enacted a series of provisions to ensure that school meals are nutritious for children.

## II.    Nutritional Requirements for the School Lunch and Breakfast Programs.

35.    As initially enacted and subject to exceptions not relevant here, both the School Lunch Act and the Child Nutrition Act require school meals to "meet minimum nutritional requirements prescribed by [USDA], on the basis of tested nutritional research." 42 U.S.C. §§ 1758(a)(1) (School Lunch Act), 1773(e)(1) (Child Nutrition Act).[3]

36.    Congress amended the School Lunch Act three times to ensure further that school meals are nutritious. First, in 1994 Congress enacted the Healthy Meals for Healthy Americans Act, which amends the School Lunch Act to require that

---

[3] The language in the School Lunch Act and Child Nutrition Act is identical except that the Child Nutrition Act does not have a comma before "on the basis."

both school lunches and breakfasts be "consistent with the goals of the most recent Dietary Guidelines for Americans." Pub. L. No. 103-448, § 106(b), 108 Stat. 4699, 4702-03 (1994) (codified at 42 U.S.C. § 1758(f)(1)).

37.     Congress amended the School Lunch Act again in 2004 to specifically direct USDA to issue nutritional regulations for the school lunch and breakfast programs that are based on the most recent Dietary Guidelines for Americans. *See* Child Nutrition and WIC Reauthorization Act of 2004, Pub. L. No. 108-265, § 103, 118 Stat. 729, 732 (2004) (codified at 42 U.S.C. § 1758(a)(4)).

38.     The Dietary Guidelines for Americans ("the Dietary Guidelines") are "nutritional and dietary information and guidelines for the general public" that are jointly issued by USDA and the U.S. Department of Health and Human Services. 7 U.S.C. § 5341(a)(1). The Dietary Guidelines are issued at least every five years and are "based on the preponderance of the scientific and medical knowledge which is current at the time the report is prepared." *Id*. § 5341(a)(1), (2).

39.     To implement the requirement that school meals be consistent with the Dietary Guidelines, in 2008 USDA contracted with the Food and Nutrition Board of the National Research Council of the National Academy of Sciences ("the Nutrition Board"). USDA directed the Nutrition Board to assemble an expert panel to "undertake a review of the nutritional needs of children" and the feasibility of changing nutritional standards in school meals and to recommend nutritional requirements for the school lunch and breakfast programs based on that review. *See* 76 Fed. Reg. 2494, 2508 (Jan. 13, 2011).

40.     The Nutrition Board assembled a committee of experts in public health, epidemiology, pediatrics, child nutrition and child nutrition behavior, menu planning, statistics, and economics, as well as managers of school lunch and breakfast programs. *Id*. at 2508.

41.     The Nutrition Board committee assessed schoolchildren's nutritional needs using the 2005-2010 Dietary Guidelines, which recommended that (1) adults consume no more than 2300 milligrams ("mg") of sodium daily and adjusted that limit for children based on age; and (2) at least half the grains consumed by both adults and children be whole grains.

42.     The Nutrition Board committee also analyzed additional scientific evidence, received written comments, and held open meetings where it received input from nutrition advocates, health professionals, and other stakeholders. *Id*. at 2496.

43.     In 2009, the Nutrition Board issued a study entitled School Meals: Building Blocks for Healthy Children ("the 2009 Nutrition Board Study").

44.     The 2009 Nutrition Board Study found that the daily sodium intake for schoolchildren "clearly was excessive" and significantly above the Dietary Guidelines. 2009 Nutrition Board Study at 58. The Study explained that there was an observed increase in children's blood pressure and that scientific studies showed that there was a "clear relationship between blood pressure and salt intake" in adolescents and an apparent relationship between sodium intake and blood pressure in children as well. *Id.* at 64. The Study also cited scientific studies

showing that "high blood pressure responds to a reduction in salt intake in children as in adults." *Id.*

45.     Based on those findings, the 2009 Nutrition Board Study recommended sodium limits for school meals that were consistent with the Dietary Guidelines. *Id.* at 177.

46.     Those recommended sodium limits were also consistent with the "Dietary Reference Intakes," national nutritional guidelines issued by the National Academy of Sciences that establish maximum safe consumption of certain nutrients. *Id.* at 53.

47.     The 2009 Nutrition Board Study also found that schoolchildren consumed "extremely low" amounts of whole grains—an important source of fiber. The Study recommended that within three years all grain products served in schools be "whole grain-rich"—*i.e.*, contain at least 51% whole grains—as recommended by the Dietary Guidelines. *Id.* at 199; *see* 76 Fed. Reg. at 2496.

48.     In 2010, Congress enacted the Healthy, Hunger-Free Kids Act, which amended the School Lunch Act a third time to direct USDA to issue regulations updating the nutritional standards for school lunches and breakfasts "based on" the 2009 Nutrition Board's recommendations. Pub. L. No. 111-296, § 201, 124 Stat. 3183, 3214-15 (2010) (codified at 42 U.S.C. § 1753(b)(3)(A)). The Healthy, Hunger-Free Kids Act required USDA to promulgate proposed regulations within eighteen months and to issue interim or final regulations within eighteen months after issuing the proposed regulations. *Id.* The Act also required USDA to include a date

by which school food authorities would be required to comply with the updated nutritional standards. *Id.* at § 1753(b)(3)(A)(ii)(II).

## III.   The 2012 Rule.

49.     In 2012, as required by the Healthy, Hunger-Free Kids Act, USDA promulgated a rule, *Nutrition Standards in the National School Lunch and School Breakfast Programs*, that updated the nutritional requirements for the school lunch and breakfast programs based on the Dietary Guidelines and the 2009 Nutrition Board Study. 77 Fed. Reg. 4088; *see also* 76 Fed. Reg. at 2496 ("the new meal requirements seek to ensure that the meals planned by school foodservice providers and selected by students reflect the food groups emphasized by the 2005 Dietary Guidelines and meet the nutrient targets identified by [the Nutrition Board]"); 82 Fed. Reg. 56,703, 56,703 (Nov. 30, 2017) (the 2012 Rule "updated the school meal requirements consistent with the Dietary Guidelines and the recommendations issued by the [Nutrition Board]").

50.     The updated nutritional requirements in the 2012 Rule are implemented at 7 C.F.R. § 210.10 (school lunch requirements) and 7 C.F.R. § 220.8 (school breakfast requirements).

51.     Before issuing the 2012 Rule, USDA had issued a proposed rule in 2011 and considered 133,268 public comments on the proposed rule. *See* 77 Fed. Reg. at 4089.

52.     The 2012 Rule was based on USDA's recognition that "[s]chools must offer nutritious, well-balanced, and age-appropriate meals to all the children they

serve to improve their diets and safeguard their health." 77 Fed. Reg. at 4143
(codified at 7 C.F.R. § 210.10(a)(1)).

53. USDA expected that the updated requirements would "enhance the
diet and health of school children, and help mitigate the childhood obesity trend."
77 Fed. Reg. at 4088.

54. USDA found that the childhood obesity epidemic "imposes substantial
economic costs" and "is associated with an estimated $3 billion in direct medical
costs." *Id*. at 4133.

55. USDA also recognized that the 2005-2010 Dietary Guidelines, as well
as the newly promulgated 2010-2015 Guidelines, provided "more prescriptive and
specific nutrition guidance than earlier releases, and require[d] significant changes
to school meal requirements." *Id*. at 4107.

56. The 2012 Rule included requirements regarding schoolchildren's
consumption of sodium and whole grains.

57. USDA, recognizing that the sodium content of school food was high,
stated: "Reducing the sodium content of school meals is a key objective of this final
rule reflecting the Dietary Guidelines recommendation for children and adults to
limit sodium intake to lower the risk of chronic diseases." *Id*. at 4097. As described
in the 2011 proposed rule, a sodium limit would in addition "help children reduce
their salt preference and develop healthier eating habits." 76 Fed. Reg. at 2503.

58. The 2012 Rule established, for the first time, a sodium limit for school
meals based on age group. 77 Fed. Reg. at 4097-98, 4146-47, 4156-57 (codified at 7

14

C.F.R. §§ 210.10(f)(3), 220.8(f)). That "final sodium target" adopted the limits for
sodium recommended by the 2009 Nutrition Board Study and the Dietary
Guidelines. 77 Fed. Reg. at 4098.

59.     The 2012 Rule phased in the final sodium target "to allow food
manufacturers additional time to reformulate products and schools more time to
build acceptance of lower sodium meals," 77 Fed. Reg. at 4097, and therefore
established two intermediate targets, target 1 and target 2. *Id.* at 4146-47, 4156-57
(codified at 7 C.F.R. §§ 210.10(f)(3), 220.8(f)(3)).

60.     The compliance date for the final sodium target was school year 2022-
2023, ten years after implementation of the 2012 Rule. *Id.*

61.     The dates for compliance with the intermediate sodium targets were
school years 2014-2015 for target 1 (two years after promulgation of the 2012 Rule)
and 2017-2018 for target 2 (five years after promulgation of the 2012 Rule). *Id.*

62.     In addition to the sodium limits, the 2012 Rule also established, for the
first time, a minimum whole grain requirement. *Id.* at 4144, 4154-55 (codified at 7
C.F.R. §§ 210.10(c), 220.8(c)).

63.     USDA recognized that whole grains are an important source of
nutrients such as iron, magnesium, selenium, B vitamins, and dietary fiber, and
that eating whole grains in nutrient-dense forms may lower body weight and reduce
the risk of cardiovascular disease. 77 Fed. Reg. at 4093.

64.     USDA found that, despite the benefits of whole grains, most of the grains that schoolchildren were eating in schools were refined grains rather than whole grains. *Id.*

65.     As USDA had done with respect to sodium, it adopted the whole grain requirement recommended by the 2009 Nutrition Board Study and the Dietary Guidelines and phased in that requirement. The 2012 Rule required that for the 2012-2013 and 2013-2014 school years, half of the grain products offered to students be whole grain-rich, *i.e.,* at least 51% whole grain. *Id.* at 4144, 4154-55 (codified at 7 C.F.R. §§ 210.10(c), 220.8(c)).

66.     Starting in the 2014-2015 school year, the 2012 Rule required schools to serve only whole grain-rich products, as recommended in the 2009 Nutrition Board Study and the Dietary Guidelines. *Id.*

67.     Thus, USDA found that the requirements for sodium and whole grain in the 2012 Rule were consistent with the 2005-2010 Dietary Guidelines and the recommendations in the 2009 Nutrition Board Study. 77 Fed. Reg at 4088.

68.     In addition, although the 2009 Nutrition Board Study was based on the 2005-2010 Dietary Guidelines, USDA further found that the 2012 Rule was also consistent with the 2010-2015 Guidelines. *Id.* at 4114 ("The final rule will more closely align school meal pattern requirements with the science-based recommendations of the 2005 and 2010 Dietary Guidelines"). The recommendations for sodium and whole grains in the 2010-2015 Guidelines are the same as in the 2005-2010 Guidelines: adults should consume no more than 2300 mg of sodium

daily and children should consume age-adjusted amounts based on that adult limit, and at least half the grains consumed by children and adults should be whole grains.[4]

69.     Beginning in school year 2015-2016, Congressional appropriations acts permitted States to grant waivers from the whole grain requirement to a school food authority, for a particular product, if it demonstrated hardship in providing that particular whole grain-rich product. When a waiver was granted, half the grain products served by the school food authority were required to be whole grain-rich. *See* 83 Fed. Reg. at 63,781; 82 Fed. Reg. at 56,714.

70.     The waiver program established by Congress expired after the 2017-2018 school year. *Id.* In that school year, which was the third year that all grain products served at school meals were required to be whole grain-rich, fewer than 20% of school food authorities were granted grain product waivers. *See id.*

71.     Manufacturers of processed foods provided for school meals—whether purchased by USDA and distributed as USDA Foods or purchased directly by school food authorities—formulate their products to meet USDA's nutritional requirements.

## IV.     The 2017 Interim Final Rule.

72.     In November 2017, USDA issued an interim final rule extending two of the 2012 Rule's deadlines. *Child Nutrition Programs: Flexibilities for Milk, Whole Grains, and Sodium Requirements*, 82 Fed. Reg. 56,703 (Nov. 30, 2017).

---

[4] The current Dietary Guidelines (2015-2020) make the same recommendations.

17

73.     The 2017 Interim Final Rule extended sodium target 1 for one year, through school year 2018-2019, which delayed implementation of target 2 to the 2019-2020 school year. *Id*. at 56,704 (codified at 7 C.F.R. §§ 210.10(f)(3), 220.8(f)(3)).

74.     The 2017 Interim Final Rule also extended the product waiver program for the whole grain requirement through school year 2018-2019. 82 Fed. Reg. at 56,704 (codified at 7 C.F.R. §§ 210.10(c), 220.8(c)).

75.     USDA did not provide the public with notice of or an opportunity to comment on the 2017 Interim Final Rule before it was issued.

76.     When USDA issued the 2017 Interim Final Rule, USDA invited the public to comment "on the long term availability" of the "flexibilities"—the one-year extension of sodium target 1 and the whole grain product waiver program—in the Interim Final Rule to "help inform the development of a final rule," 82 Fed. Reg. at 56,703. USDA also stated that it anticipated retaining sodium target 1 until school year 2020-2021. *Id.* at 56,704. USDA did not state that it was considering eliminating the final sodium target or eliminating the requirement that all grain products served in school be whole-grain rich.

## THE 2018 RULE

**I.     The Provisions of the 2018 Rule.**

77.     In 2018, USDA issued a final rule that significantly weakens the nutritional requirements for sodium and whole grains applicable to the school lunch

and breakfast programs.[5] *Child Nutrition Programs: Flexibilities for Milk, Whole Grains, and Sodium Requirements*, 83 Fed. Reg. 63,775 (codified at 7 C.F.R. § 210.10; 7 C.F.R. § 220.8).

78.   First, the 2018 Rule eliminates the final sodium target, which would have gone into effect in the 2022-23 school year. 83 Fed. Reg. at 63,776, 63,787.

79.   USDA explained that it eliminated the 2012 Rule's final sodium target because new Dietary Guidelines would be released in 2020 and the National Academy of Sciences had undertaken a study to update the Dietary Reference Intakes on sodium.[6] *Id*.

80.   The 2012 Rule's final sodium target adopted the sodium limits for children in the Dietary Guidelines—which remained the same in the 2005-2010, 2010-2015, and 2015-2020 Guidelines—and USDA's elimination of that target is inconsistent with those Guidelines.

81.   The 2012 Rule's final sodium target also adopted the recommended sodium limits in the 2009 Nutrition Board Study and USDA's elimination of that target conflicts with the Study.

---

[5] The 2018 Rule also revised the 2012 Rule's requirement for serving flavored milk by allowing schools to serve flavored milk with 1% fat, rather than only no-fat flavored milk. 83 Fed. Reg. at 63,778-80. The States do not challenge that revision.

[6] The new Dietary Reference Intakes were released by the National Academy of Sciences on March 5, 2019. The sodium limits for children ages 4 to 13 in the new Dietary Intakes are lower than the limits on which the final sodium target in the 2012 Rule was based. The new limits for ages 14 to 18 are the same as the limits on which the final sodium target was based.

82.     USDA did not explain how its elimination of the sodium limits in the Dietary Guidelines and the 2009 Nutrition Board Study was "consistent with the goals of the most recent Dietary Guidelines for Americans" and "based on" the Nutrition Board's recommendations, as required by the School Lunch Act, 42 U.S.C. §§ 1758(f)(1), 1753(b)(3)(A).

83.     USDA did not base its elimination of the final sodium target on "tested nutritional research," as required by the School Lunch Act, *id*. § 1758(a)(1), and the Child Nutrition Act, *id*. § 1773(e)(1).

84.     USDA also did not base its elimination of the final sodium target on any other nutritional science, nor did it rely on any change in the scientific evidence regarding children's nutrition since the promulgation of the 2012 Rule.

85.     Second, the 2018 Rule delays by five years the requirement for schools to meet sodium target 2, from school year 2019-2020 to school year 2024-2025. 83 Fed. Reg. at 63,776.

86.     USDA stated that it delayed sodium target 2 to allow "more time for product reformulation, school menu adjustments, food service changes, personnel training, and changes in student preferences." *Id*. at 63,783.

87.     USDA stated that its delay of sodium target 2 will provide "certainty" to the food industry but did not explain why the delay provides greater certainty than the prior deadline. *See id*. at 63,785.

88.     USDA acknowledged that "[m]ore than 9 in 10 U.S. school children eat more sodium than the age-specific Tolerable Upper Intake Level." *Id*. at 63,787.

89.     USDA also acknowledged that, under sodium target 1, which has been in effect since the 2014-2015 school year, schoolchildren are consuming over 90% of their daily recommended sodium limit just in school breakfast and lunch. *Id*. at 63,787.

90.     USDA did not explain how its delay of sodium target 2 was "consistent with the goals of the most recent Dietary Guidelines for Americans" and "based on" the Nutrition Board's recommendations, as required by the School Lunch Act, 42 U.S.C. §§ 1758(f)(1), 1753(b)(3)(A).

91.     USDA did not base its delay of sodium target 2 on "tested nutritional research," as required by the School Lunch Act, *id*. § 1758(a)(1), and the Child Nutrition Act, *id*. § 1773(e)(1).

92.     USDA also did not base its delay of sodium target 2 on any other nutritional science, nor did it rely on any change in the scientific evidence regarding children's nutrition since the promulgation of the 2012 Rule.

93.     Third, the 2018 Rule requires only half of the weekly grains offered to students to be whole grain-rich. 83 Fed. Reg. at 63,776. Under the 2012 Rule, schools had been required to offer only whole grain-rich products—*i.e.*, products containing at least 51% whole grains—beginning in school year 2014-15. *Id*. at 63,786.

94.     USDA stated that lowering the 2012 Rule's whole grain requirement "is consistent with USDA's commitment to alleviate difficult regulatory

requirements, simplify operational procedures, and provide school food authorities ample flexibility to address local preferences." *Id*. at 63,781.

95.     USDA also stated that the requirement that all grain products be whole grain-rich "proved impractical for many school districts" but acknowledged that fewer than 20% of school food authorities had been granted product waivers for the 2017-2018 school year. *See id*.

96.     The 2012 Rule adopted the whole-grain rich standard in the Dietary Guidelines—which remained the same in the 2005-2010, 2010-2015, and 2015-2020 Guidelines—beginning in the 2014-2015 school year. Lowering that standard to require that only half of grain products be whole grain-rich is inconsistent with the 2015-2020 Dietary Guidelines.

97.     The 2012 Rule also adopted the whole-grain rich standard in the 2009 Nutrition Board Study beginning in the 2014-2105 school year. Lowering that standard to require that only half of grain products be whole grain-rich conflicts with the 2009 Nutrition Board Study.

98.     USDA did not explain how lowering the whole grain requirement recommended by the Dietary Guidelines and the 2009 Nutrition Board Study was "consistent with the goals of the latest Dietary Guidelines for Americans" and "based on" the Nutrition Board's recommendations, as required by the School Lunch Act, 42 U.S.C. §§ 1758(a)(4), 1758(f)(1), 1753(b).

99.    USDA did not base its lowering of the 2012 Rule's whole grain requirement on "tested nutritional research," as required by the School Lunch Act, *id.* § 1758(a)(1), and the Child Nutrition Act, *id.* § 1773(e)(1).

100.    USDA also did not base its lowering of the 2012 Rule's whole grain requirement on any other nutritional science, nor did it rely on any change in the scientific evidence regarding children's nutrition since the promulgation of the 2012 Rule.

101.    The 2018 Rule was not issued as a proposed rule nor was there an opportunity for comment on it.

102.    USDA characterizes the 2018 Rule as a "culmination" of a rulemaking process that included the 2017 Interim Final Rule. 83 Fed. Reg. 63,776. However, the Interim Final Rule did not make the changes to the 2012 Rule's sodium and whole grain requirements that were later made by the 2018 Rule, or provide notice that USDA proposed to make those changes. Thus, the opportunity to comment on the 2017 Interim Final Rule was not a meaningful opportunity to comment on the changes.

## II.    The 2018 Rule Harms the States.

103.    Except the District of Columbia, the States have quasi-sovereign (or *parens patriae*), sovereign, and proprietary interests in the health and well-being of children who live in the States and obtain a substantial portion of their daily nutrition from the school lunch and breakfast programs.

104.    The District of Columbia asserts its quasi-sovereign (or *parens patriae*)

interests, its proprietary interests, and its authority to enforce its laws and uphold

the public interest under its Attorney General Act, which was intended to

incorporate the common law authority of state attorneys general. *See* D.C. Code § 1-

301.81.

105.    USDA has acknowledged that children who eat school meals will be

impacted by the 2018 Rule. USDA Food and Nutrition Service, Civil Rights Impact

Analysis, at 5 (Oct. 15, 2018).[7]

106.    The 2018 Rule will expose children who live in the States and eat

meals in schools to health consequences to which they would not have been exposed

if USDA had not eliminated the final sodium target, delayed sodium target 2, and

lowered the whole grain requirement.

107.    As USDA found when it issued the 2012 Rule, high-sodium diets

adversely affect students' cardiovascular health and increase the risk of chronic

cardiovascular disease. 77 Fed. Reg. at 4097-98.

108.    As USDA also found when it issued the 2012 Rule, whole grains "are a

source of nutrients such as iron, magnesium, selenium, B vitamins, and dietary

fiber" and "evidence suggests that eating whole grains in nutrient dense forms may

lower body weight and reduce the risk of cardiovascular disease." *Id.* at 4093.

109.    School meals with higher levels of sodium and lower whole grains pose

particular harm to children and adolescents who have elevated risk factors for

---

[7] *Available at* https://www.regulations.gov/document?D=FNS-2017-0021-7771.

cardiovascular disease and other health problems due to obesity. As the USDA observed when it proposed the 2012 Rule, the Centers for Disease Control has found that about 17% of children and adolescents in the United States between the ages of 6 and 19 are obese and are "more likely to have risk factors associated with cardiovascular disease (such as high blood pressure, high cholesterol, and Type 2 diabetes) than other children and adolescents." 76 Fed. Reg. at 2495.

110.   The childhood obesity epidemic is associated with approximately $3 billion in direct medical costs. 77 Fed. Reg. at 4133.

111.   The States pay health care costs for eligible low-income and moderate-income residents, including children, through a number of programs funded in whole or in part by the States.

112.   USDA has acknowledged that "given racial disparities in health outcomes, there is the potential for an adverse impact" on Black and Latino schoolchildren caused by the delay of sodium target 2 and the weakening of the whole grain requirement. Civil Rights Impact Analysis, at 4-5.

113.    The 2018 Rule makes the following changes to the 2012 Rule's sodium targets:

| Sodium Targets for School Lunches and Breakfasts Under the 2012 Rule and the 2018 Rule | | | | | |
|---|---|---|---|---|---|
| Sodium Target | Grades K-5 | Grades 6-8 | Grades 9-12 | 2012 Rule Timeline (School Years) | 2018 Rule Timeline (School Years) |
| Sodium Target 1 | ≤ 1770 mg | ≤ 1960 mg | ≤ 2060 mg | 2014-15 to 2016-17 (extended to 2018-19) | Extended to 2023-24 |
| Sodium Target 2 | ≤ 1420 mg | ≤ 1570 mg | ≤ 1650 mg | 2019-20 to 2021-22 | Starts 2024-25 |
| Final Sodium Target | ≤ 1070 mg | ≤ 1180 mg | ≤ 1240 mg | Starts 2022-2023 | Eliminated |

114.    Sodium target 1, which was implemented beginning in school year 2014-2015 pursuant to the 2012 Rule, reduced sodium in elementary school lunches by approximately 11% from the pre-2012 Rule baseline and in elementary school breakfasts by approximately 5% from that baseline. *See* 77 Fed. Reg. at 4097-98.

115.    Before the 2018 Rule, sodium target 2 was required to be implemented beginning in the 2019-2020 school year and would have reduced sodium in elementary school lunches by approximately 32% and in elementary school breakfasts by approximately 15% from the pre-2012 Rule baseline. *See id*. The 2018 Rule delays the implementation of sodium target 2 to the 2024-2025 school year.

116.    Under the 2012 Rule, the final sodium target was required to be implemented by the 2022-2023 school year and would have reduced sodium in

26

elementary school lunches by approximately 54% and in elementary school breakfasts by approximately 25% from the pre-2012 Rule baseline. 77 Fed. Reg. at 4097-98. The 2018 Rule eliminates the final sodium target entirely.

117.    Under the 2012 Rule, all grain products served in school meals were required to be whole grain-rich starting in the 2014-2015 school year. Under the 2018 Rule, only half of the grain products served in school meals are required to be whole grain-rich.

118.    USDA Foods and foods that schools purchase directly from food manufacturers are formulated to meet USDA's nutritional requirements.

119.    Reduced-sodium food products are likely to cost more than products without reduced sodium because sodium is one of the lowest-cost ingredients in food products and any sodium substitutes that help to maintain flavor are likely to cost more.

120.    As a result of the 2018 Rule, schools in the States will serve food that does not meet the 2012 Rule's sodium and whole grain requirements.

121.    The 2018 Rule will have two impacts on the amount of sodium in school meals, one as a result of the delay of sodium target 2 and the other as a result of the elimination of the final sodium target.

122.    As a result of the 2018 Rule's delay of sodium target 2 from the 2019-2020 school year until the 2024-2025 school year, children in the States will eat school meals significantly higher in sodium until that school year than they would have under the 2012 Rule.

123.    As a result of the 2018 Rule's elimination of the final sodium target that was scheduled to go into effect in the 2022-2023 school year, children in the States will eat school meals significantly higher in sodium beginning in that school year than they would have under the 2012 Rule.

124.    As a result of the 2018 Rule's lowering of the whole grain requirement that had been in effect since the 2014-2015 school year, children in the States will eat fewer whole grain-rich products than they would have under the 2012 Rule.

125.    Before the 2018 Rule, the States relied on the federal sodium and whole grain requirements in the 2012 Rule. To enforce those federal requirements, the States relied on "guidance, technical assistance, and tailored training programs" provided by USDA. *See* 83 Fed. Reg. at 63,776.

126.    When USDA reduced the federal sodium and whole grain requirements in the 2018 Rule, it stated that States can impose stricter requirements. *Id.* at 63,781, 63,783. States that promulgate their own stricter requirements as a result of the 2018 Rule will have an increased regulatory burden.

127.    In response to the 2017 Interim Final Rule, the District of Columbia passed the Healthy Students Amendment Act of 2018 which imposes the 2012 Rule's whole grain requirement. D.C. Law 22-240.

128.    With respect to whole grains, the District of Columbia requires that "[a]ll grain products shall be whole grain-rich," meaning that the products contain at least 50% whole grains. *Id.*

129.   In order to enforce its whole grain requirement, the District of Columbia will need to develop and implement its own training techniques and compliance tools.

130.   To implement its whole grain requirement, the school food authorities in the District of Columbia will have to make greater effort to procure whole grain-rich products than it would have if USDA had not lowered the 2012 Rule's whole grain requirement.

## FIRST CLAIM FOR RELIEF
### The 2018 Rule Was Promulgated Without Notice and Comment

131.   The States reallege and incorporate by reference the allegations set forth in all preceding paragraphs.

132.   The APA provides that this Court "shall" "hold unlawful and set aside" agency rules adopted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

133.   Under the APA, a federal agency must publish notice of a proposed rulemaking in the Federal Register, 5 U.S.C. § 553(b), and "shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id.* at § 553(c).

134.   The opportunity for public comment under 5 U.S.C. § 553(c) must be meaningful, which means the agency must allow comment on the relevant issues. An agency may only issue a rule after "consideration of the relevant matter presented" in public comments. 5 U.S.C. § 553(c).

135.    USDA did not provide the States notice of or an opportunity to comment on the provisions in the 2018 Rule that eliminate the final sodium target, delay compliance with sodium target 2, and cut in half the whole grain requirement.

136.    The opportunity to comment on the 2017 Interim Final Rule after its promulgation did not constitute an opportunity to comment on those provisions.

137.    As a result, those provisions of the 2018 Rule were adopted "without observance of procedure required by law" and should be held unlawful and set aside under the APA, 5 U.S.C. § 706(2)(D).

## SECOND CLAIM FOR RELIEF
### The 2018 Rule Is Not in Accordance with Law

138.    The States reallege and incorporate by reference the allegations set forth in all preceding paragraphs.

139.    The APA provides that this Court "shall" "hold unlawful and set aside" agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A).

140.    The School Lunch Act and Child Nutrition Act require school meals to meet nutritional requirements prescribed by USDA "on the basis of tested nutritional research." 42 U.S.C. §§ 1758(a)(1) (School Lunch Act) and 1773(e)(1) (Child Nutrition Act).

141.    The School Lunch Act requires the nutritional requirements for school meals to "be consistent with the goals of the most recent Dietary Guidelines for Americans" and "based on" the Nutrition Board's 2009 recommendations. *Id*. §§ 1753(b), 1758(f)(1).

142.    The provisions in the 2018 Rule that eliminate the final sodium target, delay compliance with sodium target 2, and cut in half the whole grain requirement are not based on tested nutritional research, consistent with the 2015-2020 Dietary Guidelines, or based on the 2009 Nutrition Board Study.

143.    As a result, those provisions of the 2018 Rule are not in accordance with the School Lunch and Child Nutrition Acts and should be held unlawful and set aside under the APA, 5 U.S.C. § 706(2)(A).

**THIRD CLAIM FOR RELIEF**
**The 2018 Rule Is Arbitrary and Capricious**

144.    The States reallege and incorporate by reference the allegations set forth in all preceding paragraphs.

145.    The APA provides that this Court "shall" "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

146.    The provisions in the 2018 Rule that eliminate the final sodium target, delay compliance with sodium target 2, and cut in half the whole grain requirement are not based on nutritional science or any change in the scientific evidence regarding children's nutrition since the 2012 Rule was issued.

147.    Those provisions do not rely on the factors that Congress required USDA to consider: tested nutritional research, the goals of the most recent Dietary Guidelines, and the 2009 Nutrition Board Study. *See* 42 U.S.C. §§ 1753(b), 1758(a)(4), 1758(a)(1), 1773(e)(1).

148.   Those provisions were issued without a reasoned explanation, including explanation of why USDA revised the sodium and whole grain requirements in the 2012 Rule.

149.   It was unreasonable to revise the sodium and whole grain requirements in the 2012 Rule on the grounds that new Dietary Guidelines would be released in 2020 and the National Academy of Sciences had undertaken a new study on sodium.

150.   As a result, those provisions of the 2018 Rule are arbitrary and capricious and should be held unlawful and set aside under the APA, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, the States respectfully request that this Court enter judgment:

A.   Declaring that the provisions in the 2018 Rule that eliminate the final sodium target, delay compliance with sodium target 2, and cut in half the whole grain requirement were adopted without observance of procedure required by law, are not in accordance with law, and are arbitrary and capricious;

B.   Holding unlawful and setting aside those provisions;

C.   Awarding plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

D.   Granting such further relief as the Court deems just and proper.

DATED: April 3, 2019

Respectfully Submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Samantha Liskow*
Matthew Colangelo
    *Chief Counsel for Federal Initiatives*
Monica Wagner
    *Deputy Chief, Environmental Protection Bureau*
Samantha Liskow
    *Assistant Attorney General*
Max Shterngel
    *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Phone: (212) 416-8479
    Samantha.Liskow@ag.ny.gov
Attorneys for Plaintiff New York

XAVIER BECERRA
*Attorney General of California*

Michael L. Newman
    *Senior Assistant Attorney General*
Sarah E. Belton
    *Supervising Deputy Attorney General*

By: */s/ Julia Harumi Mass*
Julia Harumi Mass*
    *Deputy Attorney General*
Office of the California Attorney General
1515 Clay Street, Suite 2000
Oakland, CA 94612-1492
Telephone: (510) 879-3300
    Julia.Mass@doj.ca.gov
Attorneys for Plaintiff California

KARL A. RACINE
*Attorney General*
*District of Columbia*

By: */s/ Robyn R. Bender*
Robyn R. Bender*
   *Deputy Attorney General*
Valerie M. Nannery*
   *Assistant Attorney General*
Office of the Attorney General for
the District of Columbia
441 4th Street, N.W., Suite 630 South
Washington, DC 20001
Tel (202) 442-9596
Fax (202) 730-1465
   robyn.bender@dc.gov
   valerie.nannery@dc.gov
Attorneys for Plaintiff the District of Columbia

KWAME RAOUL
*Attorney General of Illinois*

By: */s/ Jamie D. Getz*
Jamie D. Getz*
   *Assistant Attorney General*
Environmental Bureau
Illinois Attorney General's Office
69 W. Washington St., 18th Floor
Chicago, Illinois 60602
(312) 814-6986
   jgetz@atg.state.il.us
Attorneys for Plaintiff Illinois

KEITH ELLISON
*Attorney General*
*State of Minnesota*

By: /s/ *Max Keiley*
Max Keiley*
Christina Brown*
   *Assistant Attorneys General*
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 900
St. Paul, Minnesota 55101-2127
(651) 757-1244 (Voice)
(651) 297-4139 (Fax)
   max.kieley@ag.state.mn.us
Attorneys for Plaintiff Minnesota

HECTOR BALDERAS
*Attorney General of New Mexico*

By: */s/ Tania Maestas*
Tania Maestas*
   *Deputy Attorney General*
New Mexico Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504
(505) 490-4849
(844)-255-9210
   tmaestas@nmag.gov
Attorneys for Plaintiff New Mexico

THOMAS J. DONOVAN, JR.
*Attorney General of Vermont*

By: */s/ Jill Abrams*
Jill Abrams
   *Assistant Attorney General*
Office of the Vermont Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-3186
   jill.abrams@vermont.gov
Attorneys for Plaintiff Vermont

*Not yet admitted to the Bar of this Court.